Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
Wensheng Ma, California SBN 299961
vincent@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone: (650) 965-8731
Facsimile:  (650) 989-2131

Attorneys for Plaintiff,
LegalForce, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGALFORCE, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>LEGALZOOM.COM, INC., a Delaware corporation,<br><br>            Defendant. | Case No. 2:18-cv-6147<br><br>**COMPLAINT FOR:**<br><br>1. TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114;<br>2. TRADEMARK INFRINGEMENT, 15 U.S.C. § 1125(a);<br>3. CYBERPIRACY, 15 U.S.C. § 1125(d); and<br>4. TRADEMARK INFRINGEMENT, CALIFORNIA COMMON LAW.<br><br>**JURY TRIAL DEMANDED** |

Plaintiff LegalForce, Inc. ("Trademarkia", "Plaintiff"), a Delaware corporation, by and through its counsel, for its Complaint against Defendant LegalZoom.com, Inc. ("LegalZoom", "Defendant"), a Delaware corporation, complains and alleges as follows:

## NATURE OF ACTION

1. Trademarkia brings this action to stop LegalZoom's unlawful conduct of cyberpiracy and infringement of Trademarkia's trademarks, which has caused Trademarkia significant monetary damage and harm to Trademarkia's brand and reputation, and has caused significant consumer confusion as to the commercial source of Trademarkia's services.

## PARTIES

2. Trademarkia is a Delaware corporation having a principal place of business at 1580 W. El Camino Real, Suite 9, Mountain View, CA 94040. Trademarkia is a market leader in the field of trademark search solutions, trademark monitoring services, general legal information, and domain name registration services. Trademarkia provides these services online at set prices, making them readily available and affordable to small businesses and general consumers across the United States. Since introducing its website in September 2009, Trademarkia has grown to become the leading, nationally recognized trademark website for small businesses and consumers.

3. LegalZoom is a Delaware corporation having a principal place of business at 101 N. Brand Blvd., Glendale, CA 91203. LegalZoom competes with Trademarkia in trademark watch and monitoring services. It also provides trademark filing and prosecution services, which Trademarkia does not provide. To gain competitive advantage over its competitors including Trademarkia, LegalZoom egregiously registers domains with similar names, redirecting the domain traffic to LegalZoom's homepage LegalZoom.com, and infringe on competitors' trademarks.

**JURISDICTION AND VENUE**

4.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because this action arises under the laws of the United States, and because it involves allegations regarding trademark violations.

5.  This Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367 because it arises from the same nucleus of operative facts as the federal claims.

6.  This Court has general personal jurisdiction over LegalZoom because LegalZoom's principal place of business is in California.

7.  Venue is proper in the United States District Court for the Central District of California under 28 U.S.C. § 1391(b) because LegalZoom resides in California and in this district.

**FACTUAL ALLEGATIONS**

**A.  The TRADEMARKIA Marks**

8.  Trademarkia is the owner of two U.S. federal trademark registrations and one pending U.S. federal trademark application:

| Marks | Reg. No.<br>Reg. Date | Serial No.<br>Filing Date | Goods/Services |
|---|---|---|---|
| Trademarkia | Reg: 3965290<br>May 24, 2011 | 85126556<br>Sept. 10, 2010 | Advertising, marketing and promotion services. (35, 42) |
| LegalForce | Reg: 4227650<br>Oct. 16, 2012 | 85483252<br>Nov. 30, 2011 | Legal services, namely, law firm services specializing in administrative, transactional, litigation, civil and criminal matters; legal document preparation and research services for attorneys; providing general information in the field of legal services via a global computer network. (45) |

| LegalForce Trademarkia | Pending | 87924397 May 24, 2018 First Use in Commerce: Apr. 13, 2012 | Providing temporary use of on-line non-downloadable software for trademark searching and managing trademark matters; Computer services, namely, providing search engines for obtaining trademark data from publicly available sources. (42) |
| --- | --- | --- | --- |

9.  The mark TRADEMARKIA was declared incontestable through Reg. No. 3965290.

10. The marks "TRADEMARKIA", "LEGALFORCE" and "LEGALFORCETRADEMARKIA" are collectively referred to as the "TRADEMARKIA Marks".

11. As a result of Trademarkia's exclusive, extensive, continuous and nationwide use of the TRADEMARKIA Marks, the marks have come to signify the leading provider of online trademark search and watch services for small businesses and consumers and have achieved such widespread public recognition that the use of the suffix "markia" anywhere in all industries across the United States is now associated with Trademarkia.

12. As an industry leader, licensees of the Trademarkia platform have expended well over ten million dollars promoting the need for trademark search services, educating and raising awareness among consumers, and advertising and promoting the TRADEMARKIA Marks.

13. In order to build and maintain its status as the leading nationally-recognized brand, Trademarkia has promoted the TRADEMARKIA Marks through advertising across the media of video, radio, and the Internet.

14. This lawsuit is necessitated by the fact that LegalZoom is seeking to trade on the TRADEMARKIA Marks' fame and goodwill by registering and using the

domain LegalZoomTrademarkia.com ("Disputed Domain") to advertise LegalZoom's services over the Internet.

15. Trademarkia often uses the phrase "LegalForce Trademarkia" combined together and has used this phrase together in emails and on the web pages of Trademarkia.com every day continuously since 2012. In addition, Trademarkia has continually owned the domain LegalForceTrademarkia.com since 2013 and has redirected traffic from this domain to Trademarkia.com. Further, the domain LegalForce.com is owned by Trademarkia and itself redirects to Trademarkia.com.

16. Upon information and belief, LegalZoom consciously and willfully registered LegalZoomTrademarkia.com, which is confusingly similar to the TRADEMARKIA Marks, in a deliberate attempt to capitalize on the goodwill associated with the TRADEMARKIA Marks. By offering similar services over the same channels of commerce to the same group of customers under confusingly similar marks, LegalZoom is intentionally attempting to capitalize on the hard-earned fame and reputation of the TRADEMARKIA Marks. Defendant's actions are willful and unlawful, are calculated to deceive consumers, and will irreparably harm the valuable goodwill Trademarkia has built up over almost the past decade as a result of hard work and considerable investment of time and money.

17. LegalZoom intentionally misleads consumers into thinking that they are going to Trademarkia's website when they enter LegalZoomTrademarkia.com (confusingly similar to LegalForceTrademarkia.com and the "LegalForce Trademarkia" mark), or that LegalZoom has acquired or merged with Trademarkia, or that LegalZoom and Trademarkia are affiliated. By these acts LegalZoom intentionally trades on Trademarkia's fame and goodwill in defiance of the law.

18. Accordingly, Defendant must be ordered to stop its infringing activities, to

pay damages to Trademarkia in an amount to be determined at trial, and to disgorge any profits it has made as a result of its willful and bad faith infringement of the TRADEMARKIA Marks.

19. As a direct result of LegalZoom's infringing conduct, Trademarkia suffered lost revenue and market share, reduced asset value and increased advertising costs. Specifically, Trademarkia's independent revenue for trademark watch and monitoring services has dropped from the high of approximately $1,545,775.00 in 2012 when it was growing at a compounded annual growth rate of over 30%, down to just $455,016.00 in 2017 -- a precipitous 70% decline in revenue over a six-year period.

**B. Abbreviated Background**

20. Trademarkia and LegalZoom are not strangers. In 2011, LegalZoom actively pursued an acquisition, investment, or partnership with Trademarkia.[1]

21. During the acquisition talks, on November 8, 2011, Trademarkia shared financial summaries of its business plan with LegalZoom under an executed non-disclosure agreement. A week later, on November 15, 2011, Trademarkia provided user interface mockups to LegalZoom senior executives via email demonstrating what the Trademarkia website might look like if it were rebranded as "**LegalZoom Trademarkia**". The email was sent to numerous members of LegalZoom's senior leadership including CEO John Suh, CFO Fred Krupica, General Counsel Chas Rampenthal, VP of Attorney Services Carter Gaffney, VP of Operations Adam Thomas, co-founder Brian Liu and others. Along with the user interface designs emailed as attachments, Raj Abhyanker, CEO of

---

[1] LegalZoom's CEO wrote to Trademarkia's CEO on November 7, 2011: "But to be clear, we are exploring a partnership up to and including acquisition." In addition, that same day, LegalZoom CFO Fred Krupica wrote "The LZ team is excited to meet and discuss the opportunities between our companies" and "We trust that things go well tomorrow and that both Raj and John decide to take it to the next level at which we would discuss terms, price, etc."

Trademarkia wrote that day to LegalZoom's senior management the following:

> *"Imagine.. see attached.  18 million unique visitors and more than 36 million page views a year seeing the Legalzoom brand this way.  Trademarkia now drives more than 1.5 million unique visitors and 3 million page views.   While our traffic is mostly organic, it is not diluted like Docstoc.  Mostly businesses and entrepreneurs click on Trademarkia pages, as they are interested in a brands, trademarks, and/or products.   Our organic audience is mostly small businesses that need a lot of the services that Legalzoom offers.   Also, with this, even more than 50% of Americans will know the Legalzoom brand very soon!   In addition, the branding should pay for itself through increased $ sales.   If you check Alexa, Trademarkia traffic today reached 6,315 (8,700 overall worldwide and 3100 in the U.S.).   By branding **LegalZoom on Trademarkia**, the Legalzoom brand would be seen on effectively twice as many pages as our traffic rankings are virtually equal now according to Alexa.  Trademarkia continues to grow very fast, and our traffic now dwarfs Rocketlawyer, Logoworks, and we're a little bigger than even Justia etc.   We expect Trademarkia site traffic to double by this time next year (many cool features in our pipeline!)."*

22. A couple of weeks later, Trademarkia and LegalZoom broke off acquisition and partnership negotiations on December 11, 2011.

23. Less than six months later, on or about June 8, 2012, LegalZoom purchased the abandoned domain name LegalZoomTrademarkia.com but did not use it.  A couple of years later, on or about April 21, 2014, LegalZoom began diverting traffic from LegalZoomTrademarkia.com to its website LegalZoom.com. To hide its conduct, on or about February 28, 2015, LegalZoom implemented GoDaddy's WHOIS privacy guard service to hide its ownership of this domain from public

view by paying a separate fee to a company called DomainsByProxy LLC. Only after being caught in April 2018 did LegalZoom stop diverting web traffic from LegalZoomTrademarkia.com to LegalZoom.com and hiding its identity as an owner through privacy guard.

24. It should be noted that for dozens of other domains owned by LegalZoom such as LegalZoom.com or "legalzoom.cm", LegalZoom leaves the domain registrant information available for public search. In contrast, LegalZoom selectively applies privacy guard—so that domain registrant information is not publicly searchable—to other domains it owns such as LegalZoomTrademarkia.com and IntuitIncorporation.com. These domains contain trademarks of LegalZoom's competitors and LegalZoom redirects these domains to its home page LegalZoom.com. Additionally, LegalZoom owns and blocks from public view "legalzoom-quickbooks", "legalzoom-quickbooks2.com", "legalzoom-quickbooks3.com", and "legalzoom-quickbooks4.com", which correspond to the trademark of Intuit, Inc.'s popular software Quickbooks.

25. LegalZoom knew its infringing conduct is unlawful because it has been involved in trademark infringement litigations in the past as both plaintiff and defendant. Moreover, upon information and belief, LegalZoom was asked to reassign a wide range of domains associated with Priceline.com over domains it owned on and redirected.[2] Additionally, LegalZoom continues to create confusion between itself and the United States Patent and Trademark Office ("USPTO")

---

[2]    At one point, LegalZoom owned domains associated with its competitor Priceline.com LLC including pfriceline.com, pricelihne.com, pricelinde.com, pricelineairfaredeals.com, pricelineairline.com, pricelineauctions.com, pricelinediscounts.com, pricelinehostels.com, pricelinehoteldeals.com, pricelinehotles.com, pricelineoffer.com, pricelineplanetickets.com, pricelinepromos.com, pricelinerates.com, pricelinesale.com, pricelinfe.com, pricelinle.com, pricelinq.com, priceljine.com, pricelpine.com, priceluine.com, priclline.com, pricneline.com, pricseline.com, pridceline.com, prifceline.com, prijceline.com, and prikceline.com.

which owns www.uspto.gov by registering and redirecting www.uspxo.com to
LegalZoom.com for many years.

**C.  Trademarkia's Efforts of Achieving Fame in TRADEMARKIA Marks.**

26. Trademarkia was founded in 2009. The Trademarkia website, available at
www.trademarkia.com, went live on or about September 15, 2009.

27. Since that time, Trademarkia has served approximately 50,000,000 (fifty
million) visitors throughout the United States, and has assisted more than 100,000
(one-hundred thousand) small business owners in the search and monitoring of
their trademark applications from more than 80 countries. In 2017 alone,
Trademarkia users placed over 10,000 orders on or through the website.

28. Trademarkia is cited as a trusted source for corporate history and branding
in at least 700 Wikipedia pages for leading brands including Disney, Samsung,
Coca Cola, Anheuser-Busch, Tesla, Kleenex, Dreamworks and hundreds of iconic
brands.

29. As a result of Trademarkia's efforts and expenditures, the
TRADEMARKIA Marks have become widely recognized by the general public of
the United States as a trusted leading news source for any new trademarks filed by
celebrities, sports teams, musicians, politicians, or big corporations.

30. Almost from Trademarkia's inception, the TRADEMARKIA Marks have
been featured and discussed in publications and on television programs and
Internet websites all over the United States, including but not limited to on
Bloomberg, FastCompany, Fox Business, New York Times, TechCrunch,
FORBES, CNBC, The World Trademark Review, TIME Magazine / Fortune,
CNN, Wall Street Journal, Washington Post, and in the ABA Journal.

31. For nearly a decade, Trademarkia has advertised extensively over the
Internet and other advertising channels. It advertises in markets throughout the
country, including large consumer markets such as Boston, New York, Chicago,
San Francisco and Los Angeles.

32. The Trademarkia website generates hundreds of thousands of hits per week. The TRADEMARKIA Marks are prominently displayed on Trademarkia webpages.

33. Trademarkia has achieved fame and recognition for its TRADEMARKIA Marks through the following innovations:

    a. *Docketing system.* Trademarkia has aggregated trademark data from nearly a dozen countries and indexes tens of millions of trademarks daily for updates. It has become a "docketing system" for the world, enabling, for free, thousands of entrepreneurs to be kept up to date on deadlines for trademarks, oppositions, renewals and more. Previously, access to such tools were reserved for wealthy corporations with access to sophisticated tools from LexisNexis, Thomson Reuters, and others. Trademarkia has made these tools free to the world.

    b. *Search Technology.* Trademarkia has helped to answer the basic question that many entrepreneurs have, which is "is my business name available to trademark", by making a knockout search from its databases of millions of trademarks, refreshed daily, freely accessible from its home page, through a search engine-like search box with little commercial advertising on its home page. As a result, Trademarkia now attracts over 23.2 million page views and approximately 9.4 million visitors to Trademarkia.com each year, making it one of the Internet's largest legal-oriented websites.

    c. *Competitive and Breaking News.* Trademarkia automatically publishes free alerts for millions of trademarks in various countries making it a leading and primary news source for breaking business news whenever new products are soon to be released and whenever new marketing campaigns launch across the world.

    d. *Catalog of American ingenuity and corporate history.* Trademarkia

was the first to publicly index trademark data as old as the year 1872, making it a deep and rich repository of American history and corporate evolution. As a result, Trademarkia is cited as a trusted source for corporate history and branding in at least 750 Wikipedia pages for leading brands including Coca Cola, Budweiser, Kellogg, and hundreds of iconic brands.

e. *Innovative logo search engine.* Trademarkia has built what is the Internet's largest logo search engine based on design code identification of trademarks, spanning over 4 million logos that can be deeply searched by "what is inside" each logo for creative inspiration and brand development, free of charge. As a result, thousands of branding agencies and entrepreneurs use Trademarkia.com each month to find and discover new inspiration for their brands.

f. *Keeping trademark bullies accountable.* Trademarkia has built what is the Internet's first catalog of large company trademark bullies, hecklers, and their victims based on the number of trademarks they oppose, threaten to oppose, and are challenged by, through its annual rankings of those companies that actively overextend their trademark rights. This data is offered for free through automated annual rankings based on government data and published annually by Trademarkia.

g. *Reducing infringement of trademarks when registering domains.* Trademarkia has built the world's first domain registration service for small businesses that automatically checks for availability of trademark rights when registering domains, to assist in reducing cyber-piracy claims and reducing wasteful federal litigation, free of charge.

h. *Global automated trademark docketing reports.* Trademarkia has built automated and semi-automated trademark reports for most of the

100+ countries through which Trademarkia offers trademark filings. As a result, companies and entrepreneurs around the world can uniquely and centrally harmonize trademark portfolio management and access global trademark protection markets through a single website.

i. *Trademark opposition window tracking.* Trademarkia has enabled small businesses to easily track their 30-day opposition window for trademarks filed with the USPTO in real time through its free opposition watch service. Prior to Trademarkia, such tools were reserved for rich corporations using expensive enterprise software by companies such as Thomson Reuters, Wolters Kluwer, and LexisNexis.

j. *Bifurcated Supply Chain Management.* Trademarkia applied best manufacturing practices to legal services by taking all non-attorney work off of attorneys' plates and globalizing it to improve quality while reducing costs.

34. The TRADEMARKIA Marks were enormously famous and distinctive at the time of LegalZoom's first infringing use in 2014, and continues to be through this day. Prior to LegalZoom's first use of the TRADEMARKIA Marks, thousands of social media posts and tweets on Facebook and Twitter mentioned Trademarkia website in popular culture and fashion as the source for leading brand information.

35. Trademarkia had become a leading news indicator, often cited by major media and television as a source for breaking news prior to 2014 because it was the first to index USPTO's trademark records through static URLs and breadcrumb structures. Through this technique, Trademarkia transformed the status changes of trademark applications into breaking news across all markets.

36. Before any new movie, book or song is released, the owner invariably

secures brand rights to the movie name through trademark protection. Fans may gravitate toward movies of their favorite actors, studios, and sequels. The information of such newly filed trademark applications are therefore newsworthy and such information associated with status changes is automatically watched and monitored by Trademarkia. Thus, status changes of trademark applications in real time can be transformed into national or international breaking news because, for example, the general public would want to know beforehand the name of the next Star Wars® movie. Because Trademarkia is the first to disseminate such news to the fans and the consuming public, the TRADEMARKIA Marks have achieved widespread fame across the United States and internationally.

37. The TRADEMARKIA Marks achieved this widespread fame across the United States, and across many different industries and popular culture - for many years before LegalZoom's first infringing use. Trademarkia had become among the largest websites in the United States, having website traffic approaching some of the largest websites on the Internet by 2014, and has attracted millions of page views and unique visitors to its Trademarkia.com website in the years prior.

38. The TRADEMARKIA Marks are of material importance to Trademarkia. Trademarkia has used the TRADEMARKIA Marks continuously for nearly a decade and has spent large amount of money promoting those marks.

39. Because of the invaluable goodwill that the TRADEMARKIA Marks represent, and its importance to the company, Trademarkia aggressively protects the TRADEMARKIA Marks.

**FIRST CLAIM FOR RELIEF**
TRADEMARK INFRINGEMENT
15 U.S.C. § 1114

40. Trademarkia repeats each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

41. Plaintiff's marks TRADEMARKIA and LEGALFORCE are valid,

protectable trademarks that are registered on the principal register at the USPTO. Plaintiff's trademark application for the mark LEGALFORCE TRADEMARKIA is pending at the USPTO. The mark's first use in commerce date is April 13, 2012.

42. In June 2012, LegalZoom purchased the Disputed Domain which contains Plaintiff's mark TRADEMARKIA. The domain name is confusingly similar to Plaintiff's own website, LegalForceTrademarkia.com, and Plaintiff's combined mark LEGALFORCE TRADEMARKIA. In April 2014, LegalZoom began to redirect traffic from the Disputed Domain to its own homepage LegalZoom.com.

43. LegalZoom's use of Plaintiff's trademark as a domain name to identify LegalZoom's website in a manner that is likely to cause confusion and/or mistake among internet users as to the source or sponsorship of Plaintiff's services constitute trademark infringement.

44. Trademarkia first discovered LegalZoom's infringing use in April 2018. Trademarkia could not have discovered the alleged misconduct sooner given the great lengths LegalZoom went through to hide and mask its ownership of the Disputed Domain through privacy guard. The ownership only became known to Trademarkia when counsel stumbled upon it through complex forensics analysis of LegalZoom's activities when researching for LegalZoom's false and misleading advertising and unfair competition violations in April 2018.

45. LegalZoom's infringing use not only created likelihood of confusion, but also has created actual confusion from customers of Trademarkia. Steve Hidalgo, Customer Service Manager employed full time by Trademarkia, states that he and other employees have spoken with numerous customers confused between LEGALFORCE and LEGALFORCE TRADEMARKIA. Moreover, Hidalgo believes that Trademarkia has lost sales because of this confusion, and that numerous Trademarkia customers have actually been confused.

46. Linguist expert Ronald R. Butters, Professor Emeritus of English at Duke

University, believes that a reasonable person is "highly likely to be linguistically confused as to source and origin of LEGALZOOMTRADEMARKIA and LEGALFORCETRADEMARKIA." It is a well-known psycholinguistic fact that the beginnings and endings of words and phrases are of paramount importance in distinguishing them one from another. For this reason alone, the potential for linguistic confusion between the two is great: a reasonable consumer will note LEGAL at the beginning of the marks and TRADEMARKIA at the end ... and focus little or no attention on the one-syllable nouns zoom and force that are buried in between, as shown below:

**LEGAL**ZOOM**TRADEMARKIA**

**LEGAL**FORCE**TRADEMARKIA**

47. Consumers see LegalZoom's homepage LegalZoom.com when accessing LegalForceTrademarkia.com. LegalZoom's light-and-dark-blue logo, "legalzoom®", is prominently shown on the top of its homepage. This creates even more likelihood of confusion to the consumers. Consumers are well aware that competing providers of goods and services often buy and sell each other, such as Amazon acquiring Whole Foods or JP Morgan merging with Chase. By placing the term "LegalZoom" in front of the mark "Trademarkia", Defendant exerts false dominion over the Plaintiff through which a reasonable consumer would believe that LegalZoom has acquired or merged with Trademarkia, or that LegalZoom and Trademarkia are affiliated.

48. Trademarkia extensively advertises the TRADEMARKIA Marks daily since 2012. Millions of Trademarkia's users and thousands of Trademarkia customers know Trademarkia's services by these marks and they search the TRADEMARKIA Marks online to reach Trademarkia's website. Because of the demonstrated confusion between LEGALZOOMTRADEMARKIA and LEGALFORCETRADEMARKIA, also because LegalZoom and Trademarkia are competitors and advertise on the same advertising platforms (e.g., Google, Bing,

1   etc.), a consumer searching for LegalForceTrademarkia would end up getting onto

2   LegalZoomTrademarkia.com website, which leads to LegalZoom.com.

3       49. Furthermore, because of the demonstrated confusion above and the fact that

4   LegalZoom and Trademarkia are in direct competition, a consumer trying to type

5   "legalforcetrademarkia.com" on his or her internet browser may end up typing

6   "legalzoomtrademarkia.com" by mistake, which leads to LegalZoom.com.

7       50. LegalZoom's homepage or the various landing pages of the redirection (*see*

8   Exhibit A, Domain Tools Report) has no disclaimer which clearly labels that the

9   website is not the website of Trademarkia, or that the website has no association

10  with Trademarkia, or that Trademarkia is not acquired by or not part of

11  LegalZoom.

12      51. Trademarkia is the sole and exclusive owner of the TRADEMARKIA

13  Marks. It has overseen, controlled, and directed goods and services marketed,

14  advertised, promoted, and sold under the TRADEMARKIA Marks.

15      52. Trademarkia has priority of use in commerce for the TRADEMARKIA

16  Marks over LegalZoom.

17      53. LegalZoom's infringing use as alleged herein was done without the

18  authorization or consent of Trademarkia.

19      54. LegalZoom also intended to use the Disputed Domain in commerce by

20  appending query strings to the domain forwarding URL so that it can keep track of

21  how much traffic actually comes from the LegalZoomTrademarkia.com website.

22  *See* Exhibit B.

23      55. Such use is likely to cause initial interest confusion of consumers who are

24  in fact searching solely for Trademarkia and/or Trademarkia's registered

25  trademarks  and is highly likely to cause confusion, mistake and deception among

26  the general public as to the origin of LegalZoom's goods and services and/or as to

27  the sponsorship by, affiliation with, and/or connection to Trademarkia.

28      56. By using Trademarkia's registered trademarks, and by selling, offering for

sale, distributing, or advertising goods and services to the general public in connection with Trademarkia's registered trademarks, for profit, LegalZoom has caused and, unless enjoined by this Court, will continue to cause likelihood of confusion and deception of members of the public, and additional injury to Trademarkia's exclusive right to control, and benefit from, its registered trademarks, as well as Trademarkia's goodwill and reputation as symbolized by the TRADEMARKIA Marks.

57. LegalZoom's conduct demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with Trademarkia's registered trademarks to Trademarkia's great and irreparable injury.

58. LegalZoom has caused and is likely to continue causing substantial injury to the public and to Trademarkia, and Trademarkia is entitled to injunctive relief and to recover all damages sustained as a result of LegalZoom's infringing conduct, including but not limited to LegalZoom's profits, Trademarkia's actual damages, enhanced profits, treble damages, statutory damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

## SECOND CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT
#### 15 U.S.C. § 1125(a)

59. Trademarkia repeats each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

60. Defendant used the TRADEMARKIA Marks in connection with the sale and advertising of services in a manner that is likely to cause confusion, mistake, and/or deception among consumers as to the affiliation, connection, or association of LegalZoom with Trademarkia, or as to the origin, sponsorship, or approval of LegalZoom's products and services by Trademarkia.

61. LegalZoom's infringing use was intentional because LegalZoom attempts to profit from the Disputed Domain by appending query strings to the domain

forwarding URL so that it can keep track of how much traffic actually comes from the LegalZoomTrademarkia.com website.

62. LegalZoom's adoption and use of the TRADEMARKIA Marks has been made notwithstanding Trademarkia's well-known rights in the famous TRADEMARKIA Marks and with both actual and constructive notice of Trademarkia's federal registration rights under 15 U.S.C. § 1072.

63. The Lanham Act prohibits any false or misleading description or representation, including words or other symbols tending falsely to describe or represent the same, made in connection with any goods or services entered into commerce.

64. Displaying LegalZoom's homepage with "legalzoom®" symbol when user accessing web link having the TRADEMARKIA Marks is misrepresentation and is likely to cause confusion or mistake, or to deceive as to the affiliation, connection or association of the Disputed Domain website with Trademarkia, or as to the origin, sponsorship, or approval by Trademarkia.

65. LegalZoom was aware of the Plaintiff's marks and reputation before engaging in its conduct as alleged herein. LegalZoom deliberately redirected its website LegalZoomTrademarkia.com to its home page and included false claims of its connection to the Trademarkia.com website, for the purpose of harassing the Plaintiff, misappropriating its substantial goodwill, and causing confusion, mistake and deception among Internet users and the public.

66. As a direct and proximate result of Defendant's infringing activities, Trademarkia has suffered irreparable injury to Trademarkia 's business, reputation, and goodwill in its federally registered TRADEMARKIA Marks and will continue to suffer such injury unless Defendant is enjoined by this Court from continuing its infringing activities.

67. LegalZoom's wrongful conduct has been willful and malicious. Plaintiff is entitled to recover LegalZoom's profits, as well as Trademarkia's actual damages,

enhanced profits and all damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1117.

68. If LegalZoom's infringement is permitted to continue, the Plaintiff faces the risk of irreparable harm. The Plaintiff's remedy at law is not by itself adequate to remedy LegalZoom's actions, and irreparable harm suffered by Trademarkia will continue unless this Court enjoins LegalZoom. Trademarkia therefore is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

### THIRD CLAIM FOR RELIEF
### CYBERPIRACY IN VIOLATION OF
### 15 U.S.C.A. § 1125(D)(1)

69. Trademarkia repeats each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

70. LegalZoom registered the Disputed Domain and used it to redirect visitors to its own legalzoom.com website.

71. LegalZoom attempts to profit from the Disputed Domain by appending query strings[3] to the domain forwarding URL so that it can keep track of how much traffic actually comes from the LegalZoomTrademarkia.com website.

72. LegalZoom actively disseminated and marketed the Disputed Domain for years. WayBackMachine archives show that LegalZoom included the Disputed Domain as part of its "Affiliate" commission program. Under this program, LegalZoom compensates "[w]ebsite owners with a strong SEO presence for legal keywords" up to 15% "for every sale completed by a referral" to LegalZoom. *See* https://www.legalzoom.com/affiliates.

73. WayBackMachine archives demonstrate that LegalZoom redirected traffic from the Disputed Domain to its affiliate tracking URLs by first redirecting to http://lztrk.com/?a=23&c=15&p=r&s1=legalzoomtrademarkia.com    and    then

---

[3] *See* https://en.wikipedia.org/wiki/Query_string.

redirecting to tracking URL at http://www.legalzoom.com/aff/home?utm_source=23&utm_medium=affiliate&utm_campaign=home&cm_mmc=affiliate-_-ck-_-23-_-na. *See* Exhibit B. Thus, when accessing the Disputed Domain, visitor was redirected to the first link. The first link was then redirected to the second link, which then displayed LegalZoom's homepage or another landing page on LegalZoom's website.

74. By appending query strings (the text after the question mark) to the tracking URL, LegalZoom tracked how many redirections are sent to the LegalZoomTrademarkia.com domain. This enabled LegalZoom to offer monetary commissions to third parties who refer customers to LegalZoomTrademarkia.com. LegalZoom knowingly and purposefully used tracking scripts and software to keep track of how much in commissions it must pay out to third parties for referrals to the LegalZoomTrademarkia.com website, and sought revenue collected from these referrals. In summary, WayBackMachine provides a forensic money trail of this history, where LegalZoom redirected LegalZoomTrademarkia.com to multiple internal tracking URL links. This clearly demonstrates LegalZoom's attempt and intent to profit from the Disputed Domain and its active promotion of the domain to third parties who were offered commissions to divert traffic from LegalZoomTrademarkia.com to LegalZoom.com.

75. The LegalZoomTrademarkia.com Domain is nearly identical to and confusingly similar to Plaintiff's distinctive TRADEMARKIA Marks, and to the Plaintiff's registered domains LegalForce.com and Trademarkia.com.

76. LegalZoom has bad faith intent to profit from the Disputed Domain. Bad faith is evidenced by, *inter alia*, their registration of the domain only after the success of the Plaintiff's Trademarkia.com website and LegalForce.com website, their redirecting of the LegalZoomTrademarkia.com domain to LegalZoom.com, and their description now saying "website coming soon!" "Please check back

soon to see if the site is available." The word "available" indicates that LegalZoom may soon sell this domain now that it has been caught.

77. LegalZoom's bad faith intent is further demonstrated by the following:

- LegalZoom has no trademark or IP rights in or to the TRADEMARKIA Marks. The Disputed Domain incorporates the intellectual property rights in the trademarks and trade names "Trademarkia" literally and exactly into the domain name.

- LegalZoom purchased the domain after the TRADEMARKIA Marks were already distinctive, had achieved significant international fame, and were registered as U.S. trademarks.

- Plaintiff LegalForce, Inc. had a previous business name of "Trademarkia, Inc." when LegalZoom registered the Disputed Domain in 2012. The Disputed Domain directly infringed on the legal name of Plaintiff.

- LegalZoom attempted to profit from affiliate payment relationships by tracking the URL when redirecting traffic from the Disputed Domain to its homepage.

- LegalZoom later admitted to its wrongful conduct by offering to transfer, sell, or assign the Disputed Domain to third parties—after being caught by the Plaintiff in April 2018, LegalZoom quickly updated the Disputed Domain to state "*Please check back soon to see if the site is available*."

- LegalZoom intended to harm the goodwill represented by the TRADEMARKIA Marks for commercial gain. It intended to tarnish and disparage the TRADEMARKIA Marks by creating a likelihood of confusion as to the source, sponsorship, affiliation and endorsement of LegalZoom.com by Plaintiff.

- LegalZoom misled the public by concealing its ownership of the

Disputed Domain shortly after it started to divert traffic to LegalZoom.com. On or about February 28, 2015, LegalZoom implemented GoDaddy's WHOIS privacy guard service to hide its ownership of the Disputed Domain from public view by paying a separate fee to a company called DomainsByProxy LLC.[4]

- LegalZoom has registered domains related to at least one other major competitor Intuit.com and misdirected traffic to LegalZoom.com.
- LegalZoom registered multiple domain names which LegalZoom knew were identical or confusingly similar to the marks of others. These marks were already distinctive at the time of registration, or were dilutive of famous marks such as uspxo.com, intuitincorporation.com, and pfriceline.com.

78. LegalZoom's actions constitute cyberpiracy in violation of the Trademarkia's rights under 15 U.S.C. § 1125(d)(1). These actions have been knowing, deliberate, willful, intentional, and flagrantly malicious in light of the Trademarkia's rights and global fame.

79. Pursuant to 15 U.S.C. § 1117, Trademarkia is further entitled to treble damages and attorneys' fees and costs.

80. LegalZoom's cyberpiracy in violation of 15 U.S.C. § 1125(d)(1) is a direct and proximate cause of LegalZoom's unjust enrichment in an amount not yet ascertained.

81. Pursuant to 15 U.S.C. § 1117(d), Trademarkia may elect, at any time before final judgment is entered by the trial court, to recover, instead of actual damages and profits for Trademarkia violation of 15 U.S.C. § 1125(d)(1), an award of statutory damages up to $100,000 per domain name, as the Court considers just.

82. Accordingly, Trademarkia is entitled to recover restitution for LegalZoom's

---

[4] It should be noted that LegalZoom has over 50 domains in which they do not actively hide their contact information. (Last checked April 2018).

1    unjust enrichment in an amount to be determined at trial.

2        83. If LegalZoom's cyberpiracy in violation of 15 U.S.C. § 1125(d)(1) is

3    permitted to continue, Trademarkia faces the risk of irreparable harm. Plaintiff's

4    remedy at law is not by itself adequate to remedy LegalZoom's actions, and

5    irreparable harm suffered by Trademarkia will continue unless this Court enjoins

6    LegalZoom. Trademarkia therefore is entitled to protection by injunctive relief,

7    including forfeiture or cancellation of the LegalZoomTrademarkia.com domain or

8    transfer of the LegalZoomTrademarkia.com domain name to Trademarkia.

9                      **FOURTH CLAIM FOR RELIEF**
                       TRADEMARK INFRINGEMENT
10                     CALIFORNIA COMMON LAW
11
12        84. Trademarkia repeats each and every allegation contained in the paragraphs

13   above and incorporate by reference each preceding paragraph as though fully set

14   forth herein.

15        85. Trademarkia is the sole and exclusive owner of the trademark rights in the

16   TRADEMARKIA Marks.

17        86. Trademarkia has priority of use in commerce for the TRADEMARKIA

18   Marks over LegalZoom.

19        87. By its acts as described above, Defendant has created a likelihood of

20   confusion, mistake, and/or deception among consumers as to affiliation;

21   connection, or association with Trademarkia or as to the origin, sponsorship, or

22   approval of Defendant's products and services by Trademarkia.

23        88. Absent injunctive relief, Trademarkia has no means by which to control

24   Defendant's infringing activities. Trademarkia is thus entitled to preliminary and

25   permanent injunctive relief prohibiting Defendant from continuing to commit such

26   acts.

27        89. In performing the conduct described herein, on information and belief,

28   Defendant acted with oppression and malice, intending to injure Trademarkia and

     to wrongfully advantage itself at Trademarkia's expense. Trademarkia is entitled

to an award of compensatory and punitive damages against Defendant, in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against LegalZoom as follows:

A. That LegalZoom and its respective agents, officers, employees, representatives, licensees, franchisees, successors, assigns, attorneys and all other entities and persons acting for, with, by through or under authority from Defendant, and each of them, be preliminarily and permanently enjoined from: (a) using the TRADEMARKIA Marks, service marks, and trade names, or any colorable imitation thereof; (b) using any trademark that imitates or is confusingly similar to or in any other way similar to any of the TRADEMARKIA Marks or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of Trademarkia' s products or its connectedness to Defendant; (c) using any trademark or service mark that is confusingly similar to the distinctiveness of any of the TRADEMARKIA Marks;

B. An order that LegalZoom permanently abandon the registration of LegalZoomTrademarkia.com Domain (and any other similar domains owned or acquired by LegalZoom);

C. That LegalZoom be required to file with the Court and serve on Trademarkia within thirty (30) days after entry of the injunction, a declaration under oath setting forth in detail the manner and form in which LegalZoom has complied with the injunction;

D. That, pursuant to 15 U.S.C. § 1117, LegalZoom be held liable for all damages suffered by Trademarkia resulting from the acts alleged herein including compensatory and punitive damages against LegalZoom in an amount to be proven at trial;

E. That, pursuant to 15 U.S.C. § 1117, LegalZoom be compelled to account to Trademarkia for any and all profits derived by LegalZoom from its illegal acts complained of herein;

F. That Plaintiff be awarded their costs and expenses of this action against LegalZoom, including their reasonable attorneys' fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 1117(a).

G. That Plaintiff be awarded treble damages to the fullest extent available under the law.

H. An award of LegalZoom's profits from their infringing conduct;

I. Award Plaintiff pre- and post-judgment interest at the applicable rates on all amounts awarded;

J. An award of statutory damages up to $100,000 per domain name in violation of 15 U.S.C. § 1125(d)(1) per 15 U.S.C. § 1117(d) if elected by Trademarkia instead of actual damages and profits, as the Court considers just;

K. Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this Complaint;

L. That the Court grant Trademarkia any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116 and 1117 or under all applicable federal or state laws; and

M. Order any other such relief as the Court deems appropriate.


Respectfully submitted this Monday, July 16, 2018.


LEGALFORCE RAPC WORLDWIDE P.C.


By___/s/ Raj V. Abhyanker_____
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiff:
LegalForce, Inc.

**JURY TRIAL DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable in this matter.

Respectfully submitted this Monday, July 16, 2018.

LEGALFORCE RAPC WORLDWIDE P.C.

By    /s/ Raj V. Abhyanker_____
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiff:
LegalForce, Inc.